OPINION OF THE COURT
Michael D. Stallman, J.
In this personal injury action arising out of an alleged rear-end motor vehicle collision, defendants Edward M. Castillo, Advance Transit Co., Inc., and the New York City Transit Authority move for summary judgment dismissing the action and all cross claims asserted as against them. Defendants City of New York, New York City Department of Buildings and Perry R. Daddario (codefendants) oppose the motion. Plaintiff also opposes the motion.
Background
On January 7, 2009, plaintiff was allegedly a passenger in an Access-A-Ride vehicle operated by defendant Edward M. Castillo. At approximately 1:58 p.m., the Access-A-Ride vehicle was allegedly rear-ended by a Toyota Prius owned by the City of New York and operated by defendant Perry R. Daddario, a crane inspector with the New York City Department of Buildings. The bill of particulars states that the accident occurred on Central Park West, at its intersection with West 77th Street in Manhattan. (Landau affirmation, exhibit D [verified bill of particulars], 1i 2-3.) Plaintiff allegedly suffered, among other injuries, a meniscal tear in her right knee. {Id. 1i 7.)
Castillo testified at his deposition that he is employed by “Advance Transit” as a driver. (Landau affirmation, exhibit J [Castillo EBT] at 8.) Castillo stated that, on January 7, 2009, he was driving a four-door, white Crown Victoria. {Id. at 16.) According to Castillo, he was traveling southbound on Columbus Avenue, made a left “on 79th [sic],” and made another left onto Central Park West. {Id. at 29.) Castillo testified as follows:
“Q. Were you fully on Central Park West at the time the accident occurred or were you turning off of a side street at that the time the accident occurred?
“A. I had turned but I was already completely on Central Park West, like half a block away.” {Id. at 28.)
When asked “What made you aware that this accident occurred?” Castillo answered, “Because I felt something light and I looked back and there was a car on the right side.” {Id. at 34.)
*541 Plaintiff testified at her deposition that she is legally blind in her left eye, that her right eye is “low vision,” and that she was coining from home to go to an eye appointment at the New York Eye and Ear Infirmary. (Landau affirmation, exhibit G [Nicholas EBT] at 7, 10-11.) According to plaintiff, the Access-A-Ride vehicle went on the West Side Highway, then exited, proceeded on West 77th Street, and turned onto Central Park West. (Id. at 13-14.) Plaintiff testified that the Access-A-Ride vehicle was proceeding in the left lane on West 77th Street, going straight to make a turn at the light. (Id. at 17, 20.) Plaintiff testified that the Access-A-Ride vehicle was slowing down before the accident. (Id. at 20.) Plaintiff was asked, “Was the Access-A-Ride vehicle slowing down gradually, abruptly, moderately; how would you describe the way the Access-A-Ride vehicle was slowing down?” Plaintiff answered, “Gradually.” (Id. at 21.) According to plaintiff, she felt a heavy impact “[o]n the right side of the back of the vehicle.” (Id. at 23-24.)
Daddario testified at his deposition that he was on West 77th Street making a left onto Central Park West. (Landau affirmation, exhibit H [Daddario EBT] at 21.) According to Daddario, he was stopped at a light, and was making a turn. (Id.) Daddario testified as follows:
“Q. Did there come a time when that traffic signal, that light turned green?
“A. Yes.
“Q. Did you begin to move your vehicle?
“A. Yes.
“Q. How long after that light turned green did this accident occur?
“A. I guess seconds after the light turned green I was in the process of turning.
“Q. That’s when the accident occurred, seconds after the light turned green, you began to move?
“A. Yes.
“Q. Did your vehicle, your 2005 Prius, did it impact or make contact with another vehicle?
“A. Yes.” (Id. at 28-29.)
Daddario testified, “I was in the process, yes, of turning. The car in front of me hit their brakes, I hit mine, and I skidded into the back of it.” (Id. at 31.)
Discussion
“It is well settled that a rear-end collision with a *542 stopped or stopping vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle, and imposes a duty on the part of the operator of the moving vehicle to come forward with an adequate nonnegligent explanation for the accident.” (Cabrera v Rodriguez, 72 AD3d 553, 553 [1st Dept 2010]; Avant v Cepin Livery Corp., 74 AD3d 533 [1st Dept 2010]; see also Dattilo v Best Transp. Inc., 79 AD3d 432, 433 [1st Dept 2010] [a rear-end collision with a vehicle that is slowing down establishes a prima facie case of negligence on the part of the driver of the rear vehicle].)
Here, it is undisputed that Daddario’s vehicle rear-ended the Access-A-Ride vehicle. Plaintiffs and Daddario’s testimony indicate that the Access-A-Ride vehicle was either slowing down or had stopped.
Codefendants argue that summary judgment should be denied because Daddario testified at his deposition that the Access-A-Ride vehicle ahead of him had stopped suddenly. Daddario was asked, “Did the Paratransit vehicle stop suddenly or did it slow down gradually before the accident?” (Daddario EBT at 67.) He answered, “Suddenly.” (Id. at 68.) Plaintiff argues that Daddario’s testimony that the Access-A-Ride vehicle stopped in front of his vehicle conflicts with Daddario’s testimony that the Access-A-Ride vehicle was moving when it was rear-ended.
In reply, movants argue that Daddario’s answer, “Suddenly,” was equivocal, in that he could also have meant that the Access-A-Ride vehicle had “Slowed down suddenly” instead of “Stopped suddenly.” This argument is not persuasive. On this motion, the non-movants are entitled to reasonable inferences to be drawn in their favor, and Daddario’s answer could reasonably be read as making a choice between the two scenarios asked, “suddenly” versus “gradually.” Thus, it is reasonable to infer that Daddario testified that the Access-A-Ride vehicle stopped suddenly.
The Appellate Division, First Department, has not been consistent as to whether evidence that the lead vehicle suddenly stopped rebuts the presumption of negligence of the rear vehicle in a rear-end collision. In Cabrera, the Appellate Division, First Department, unanimously stated, “[a] claim that the driver of the lead vehicle made a sudden stop, standing alone, is insufficient to rebut the presumption of negligence.” (72 AD3d at 553.) However, a year later, the Appellate Division, First Department, unanimously stated in Berger v New York City Hous. Auth. (82 AD3d 531 [2011]): “It is well established that evi *543 dence of a rear-end collision with a stopped vehicle constitutes a prima facie case of negligence on the part of the operator of the moving vehicle, which may be rebutted by evidence that the vehicle in front stopped suddenly.” (Id. at 531 [emphasis supplied and citations omitted].)
Cabrera follows a rule cited in many First Department cases for over the past decade. (See e.g. Dicturel v Dukureh, 71 AD3d 558, 559 [1st Dept 2010]; Soto-Maroquin v Mellet, 63 AD3d 449 [1st Dept 2009]; Francisco v Schoepfer, 30 AD3d 275 [1st Dept 2006]; Woodley v Ramirez, 25 AD3d 451, 452 [1st Dept 2006]; Mullen v Rigor, 8 AD3d 104 [1st Dept 2004]; see Verdejo v Aguirre, 8 AD3d 63 [1st Dept 2004]; Malone v Morillo, 6 AD3d 324 [1st Dept 2004]; Moustapha v Riteway Intl. Removal, 283 AD2d 175 [1st Dept 2001]; Agramonte v City of New York, 288 AD2d 75 [1st Dept 2001] [applying presumption where front vehicle stops suddenly in slow-moving traffic]; Mitchell v Gonzalez, 269 AD2d 250, 251 [1st Dept 2000].)
Berger follows a rule implied in a handful of First Department cases over the same time period. (Cf. Somers v Condlin, 39 AD3d 289, 289 [1st Dept 2007] [“there was no evidence in the record that plaintiff had acted in such a way as to cause the accident, such as by stopping suddenly or by veering in front of defendant”]; Farrington v New York City Tr. Auth., 33 AD3d 332, 332 [1st Dept 2006] [no evidence to support driver’s assertion that the vehicle in front of him had stopped suddenly, “so as to rebut the presumption of (the driver’s) negligence”]; Sawhney v Bailey, 13 AD3d 203, 203 [1st Dept 2004] [denying summary judgment because “issues may arise as to whether the driver of the forward vehicle stopped or slowed suddenly”]; see Barry v City of New York, 283 AD2d 300 [1st Dept 2001] [upholding jury verdict finding defendant 100% at fault, based on evidence that defendant’s vehicle either stopped suddenly or failed to give a proper signal that it was already stopped in front of a tow truck, which set off a chain collision].)
This year, the Appellate Division, First Department, stated in Androvic v Metropolitan Transp. Auth. (95 AD3d 610 [1st Dept 2012]), “In opposition, plaintiff failed to provide a nonnegligent explanation for the rear-end collision sufficient to establish an issue of fact regarding the MTA defendants’ negligence. That the bus came to a sudden stop was insufficient to raise a triable issue of fact.” (Id. at 610 [citation omitted], citing Francisco, 30 AD3d 275.)
Given that Androvic is the most recent precedent on this issue that follows the trend of the majority of cases in the First *544 Department, Daddario’s testimony that the Access-A-Ride vehicle suddenly stopped is not, in itself, sufficient to rebut the presumption of negligence.
Next, codefendants contend that an issue of fact arises as to whether Daddario’s actions were reasonable on the day of the accident, because Daddario testified at his deposition that the road was “icy, rainy, slushy.” (Daddario EBT at 18.) Codefendants submit a weather report produced by the National Climatic Data Center, which shows that, on January 7, 2009, temperatures ranged from 31 to 38 degrees Fahrenheit, and there was precipitation throughout the day, with .02 inches of precipitation for the hour ending at 2:00 p.m. (Shin opp affirmation, exhibit A.) However, “[i]t is well settled that a driver is expected to drive at a sufficiently safe speed and to maintain enough distance between himself and cars ahead of him so as to avoid collisions with stopped vehicles, taking into account the weather and road conditions." (Francisco, 30 AD3d at 275-276 [emphasis supplied and internal quotation marks and brackets omitted].)
Codefendants also argue that summary judgment should not be granted because of issues of fact as to whether Castillo was negligent in failing to adjust plaintiffs seat in the Access-A-Ride vehicle. Plaintiff testified as follows:
“Q. When you sat down after putting on the seat belt and you were in position for the driver to move forward, how far were your knees from the dashboard?
“A. It was no room.
“Q. Was there just an inch or so, or more?
“A. I was jammed, I was jammed in. . . .
“Q. Do you know if you couldn’t adjust the seat because it was broken or did he just tell you not to?
“A. He told me not to.” (Landau affirmation, exhibit F at 17-18.)
Finally, codefendants argue there is a question of fact as to whether Castillo’s visibility of any vehicles traveling behind him was affected, in that he testified at his deposition that the Access-A-Ride vehicle had no rear windshield wiper. (Landau affirmation, exhibit J at 32.)
These remaining arguments fail to raise a triable issue of fact as to the movants’ negligence. Codefendants cite no authority for the proposition that Castillo’s failure to adjust plaintiffs seat violated a common-law duty of care owed to plaintiff. Neither do codefendants cite any authority for the proposition that *545 operating a vehicle not equipped with a rear windshield wiper constitutes negligence, especially in the situation where the vehicle was rear-ended.
Therefore, the motion for summary judgment dismissing the complaint and any cross claims by and against defendants Edward M. Castillo, Advance Transit Co., Inc., and the New York City Transit Authority is granted.
Conclusion
Accordingly, it is hereby ordered that this motion for summary judgment by defendants Edward M. Castillo, Advance Transit Co., Inc., and the New York City Transit Authority is granted, the complaint and any cross claims against defendants Edward M. Castillo, Advance Transit Co., Inc., and the New York City Transit Authority are severed and dismissed, with costs and disbursements to defendant as taxed by the clerk upon the submission of an appropriate bill of costs; and the cross claims by these defendants are dismissed; and it is further ordered that the clerk is directed to enter judgment accordingly; and it is further ordered that the remainder of the action shall continue.